OPINION *Page 2 
{¶ 1} Defendant-appellant Austin Southwick appeals his conviction and sentence from the Delaware County Court of Common Pleas on one count of carrying a concealed weapon. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On July 1, 2005, the Delaware County Grand Jury indicted appellant on one count of carrying a concealed weapon (a .380 Colt Auto handgun) in violation of R.C. 2923.12(A), a felony of the fourth degree. At his arraignment on September 7, 2005, appellant entered a plea of not guilty to the charge.
 {¶ 3} After appellant waived his right to a jury trial, a bench trial commenced on May 16, 2006. The following testimony was adduced at trial.
 {¶ 4} Officer John Hartman, who is employed by the City of Delaware, testified that he was on duty and in uniform in a marked cruiser on June 12, 2005, at approximately 3:49 a.m. The officer testified that he went to appellant's apartment in response to a call that a woman was in trouble and that a man on the premises had a firearm. When Officer Hartman and Officer Christopher Cox arrived on the scene, they could see a man and a woman fighting through an open window. According to the officer, "[b]oth of them were throwing their hands up, yelling. . . . It looked like a pillow that was thrown." Transcript at 18. The couple, who were appellant and his wife, then exited the apartment.
 {¶ 5} Appellant then told the police, who had him put his hands behind his head, that he had a gun in his waistband. Officer Hartman testified that he pulled up *Page 3 
appellant's shirt, which was untucked, and saw the butt of a weapon. Appellant was then handcuffed.
 {¶ 6} At the bench trial, appellant testified that he was in bed at his parents' house on June 12, 2005, at approximately 3:00 a.m. when he received a cell phone call from Alycia, his then wife. Appellant testified that Alycia, who was at a graduation party and was drunk, "sounded very upset and very distraught. She said there was guys there being forceful with her, following her around, and she was very uncomfortable, she's afraid she might be raped or assaulted, and she wanted me to come help her." Transcript at 98. Appellant testified that he then went to the gun safe, grabbed his father's gun and headed to the graduation party.
 {¶ 7} While he was on his way to the party, appellant received another cell phone call from his wife, who told him that she was leaving the party and that she would meet him at Buehler's down the street. The following is an excerpt from appellant's trial testimony:
 {¶ 8} "Q. Did she tell you anything other than she had to leave the party?
 {¶ 9} "A. She — I was under the impression she was leaving because someone was chasing her. Before she communicated to me, over the phone, she was afraid that if she left she would be followed. And that you know, if she stayed she was hurt. And so that's why she wanted me to come, she had no idea what was happening, she was stuck there and she was afraid somebody or something would happen." Transcript at 101.
 {¶ 10} When he arrived at Buehler's, appellant got into an argument with his wife. Appellant testified that he forcefully put his wife into his truck because she was drunk *Page 4 
and he did not want to let her drive. The two then went to their apartment and got into another argument. Alycia's friend called the police on Alycia's behalf because appellant had a gun. At the trial, appellant testified that his gun was in his waistband the whole time and that his shirt was tucked behind the gun. When asked whether his shirt was tucked in, appellant testified as follows:
 {¶ 11} "A. No, it wasn't tucked in. But it was, the shirt was right enough where it clung to you, you stuck the gun down in front of your pants.
 {¶ 12} "Q. So, it was fair to say it could hang a little bit over your waistband of your jeans?
 {¶ 13} "A. Sure.
 {¶ 14} "Q. The back?
 {¶ 15} "A. Sure." Transcript at 108. A magazine with live rounds was found in the gun.
 {¶ 16} The trial court, on May 16, 2006, found appellant guilty of carrying a concealed weapon. Pursuant to a Judgment Entry filed on July 12, 2006, appellant was placed on community control for a period of three (3) years.
 {¶ 17} Appellant now raises the following assignment of error on appeal:
 {¶ 18} "I. THE TRIAL COURT ERRED BY NOT APPLYING THE COMMON LAW AFFIRMATIVE DEFENSE TO CARRYING A CONCEALED WEAPON.
 {¶ 19} "II. THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE." *Page 5 
 I {¶ 20} Appellant, in his first assignment of error, argues that the trial court erred in failing to apply an affirmative defense to the charge of carrying a concealed weapon. We disagree.
 {¶ 21} Appellant specifically argues that the trial court should have applied the following affirmative defense that was contained in R.C.2923.12(C): "It is an affirmative defense to a charge under this section of carrying or having control of a weapon other than dangerous ordnance,[1] that the actor was not otherwise prohibited by law from having the weapon, and that any of the following apply: . . .
 {¶ 22} "(2) The weapon was carried or kept ready at hand by the actor for defensive purposes, while he was engaged in a lawful activity, and had reasonable cause to fear a criminal attack upon himself or a member of his family, or upon his home, such as would justify a prudent man in going armed."
 {¶ 23} However, such language was contained, by appellant's own admission, in the version of R.C. 2923.12 that was in effect prior to 2004. We must look to the version of the statute that was in effect at the time of the offense. See, for example, State v. Young, Ross App. No. 04 CA 2765, 2004-Ohio-4730. The version of the statute in effect when appellant committed the offense of carrying a concealed weapon on June 12, 2005, was adopted in 2004 and does not contain such language. Such version of R.C. 2923.12 states as follows: "(D) It is an affirmative defense to a charge under division (A)(1) of this section of carrying or having control of a weapon other than a *Page 6 handgun and other than a dangerous ordnance that the actor was not otherwise prohibited by law from having the weapon and that any of the following applies: . . .
 {¶ 24} "(2) The weapon was carried or kept ready at hand by the actor for defensive purposes while the actor was engaged in a lawful activity and had reasonable cause to fear a criminal attack upon the actor, a member of the actor's family, or the actor's home, such as would justify a prudent person in going armed." (Emphasis added).[2]
 {¶ 25} Because the affirmative defense cited by appellant is not applicable, the trial court did not err in failing to apply the same.
 {¶ 26} Appellant's first assignment of error is, therefore, overruled.
 II {¶ 27} Appellant, in his second assignment of error, argues that his conviction for carrying a concealed weapon is against the manifest weight of the evidence. We disagree.
 {¶ 28} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, 678 N.E.2d 541, citing State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the *Page 7 
trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact.State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.
 {¶ 29} Appellant, in the case sub judice, was convicted of violating R.C. 2923.12(A). Such section states, in relevant part, as follows: "(A) No person shall knowingly carry or have, concealed on the person's person or concealed ready at hand, any of the following: . . . (2) A handgun other than a dangerous ordnance;"
 {¶ 30} Appellant does not dispute that he had a handgun on his person. Nor does appellant argue that the same was not concealed on his person. As is stated above, Officer Hartman testified that the gun was concealed underneath appellant's tucked in shirt. Appellant contends that his conviction is against the manifest weight of the evidence once the affirmative defense set forth in the former version of R.C. 2923.12(C), cited above, is applied. But, as is stated above, we find that the version of the statute that appellant cites is not applicable.
 {¶ 31} In short, upon our review of the record, we find that the trial court, as trier of fact, did not lose its way in convicting appellant of carrying a concealed weapon. *Page 8 
 {¶ 32} Appellant's second assignment of error is, therefore, overruled.
 {¶ 33} Accordingly, the judgment of the Delaware County Court of Common Pleas is affirmed.
 Edwards, J. Gwin, P.J. and Hoffman, J. concur. *Page 9 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Delaware County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] The parties, in the case sub judice, do not argue that the handgun is a dangerous ordnance as such term is defined in R.C. 2923.11(K).
[2] R.C. 2923.12 has since been amended, effective March 14, 2007. Subsection (D)(2), however, was not affected by the amendment. *Page 1